# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

GREGORY MCCRAY,
individually and
derivatively on behalf of
FDH INFRASTRUCTURE
GROUP, LLC, a Delaware limited
liability company,

      Plaintiff and
      Counterclaim Defendant,

    v.

FDH HOLDINGS, LLC, a
Delaware limited liability
company,

      Defendant and
      Counterclaim Plaintiff,

    and

FDH INFRASTRUCTURE
GROUP, JULIAN MASH, and
JOHN ROBINSON,

      Defendants.

C.A. No. 2024-0858-CDW

## ORDER RESOLVING MOTION
## TO DISMISS COUNTERCLAIM

**WHEREAS:**

    A.    Counterclaim Plaintiff FDH Infrastructure Holdings, LLC ("Parent

Company") is a Delaware limited liability company that owned and operated

FDH Infrastructure Services, LLC ("Operating Subsidiary").[1] Operating Subsidiary "was an engineering-services and inspection technologies firm headquartered in Raleigh, North Carolina."[2]

B.    Counterclaim Defendant Greogory McCray resides in Chicago, Illinois and served as the Operating Subsidiary's manager and CEO from May 2018 until he resigned on March 6, 2024.[3]

C.    In May 2018, in connection with his hiring as CEO, McCray executed an employment agreement with Operating Subsidiary.[4] McCray lived in Chicago when he was hired and continued to reside there through the duration of his employment for the Operating Subsidiary.[5]

D.    In September 2018, McCray hired Amir Rakha to serve as Operating Subsidiary's Vice President of Infrastructure and Non-Destructive Testing.[6]  At the time of hiring, Rakha resided in Denver, Colorado.[7] Operating Subsidiary agreed to reimburse Rakha for his living expenses

---

[1] Defs.' Am. Ans. and Verified Countercl. of FDH Hldgs., LLC ¶¶ 3, 5, 7, Dkt. 28 ("Countercl.").

[2] *Id.* ¶ 7.

[3] *Id.* ¶¶ 2–4, 49.

[4] *Id.* ¶ 8.

[5] *Id.* ¶¶ 13–14, 16.

[6] *Id.* ¶ 29.

[7] *Id.* ¶ 32.

incurred while in Raliegh for his position from October 1, 2018 to January 1, 2019.[8]

E.    In October 2020, McCray hired David Borkovec to serve as Operating Subsidiary's Vice President of Finance.[9] Borkovec lived in Chicago at the time he was hired.[10] Operating Subsidiary agreed to reimburse Borkovec for employment related living expenses he incurred while in Raliegh from November 2, 2020 to January 1, 2022.[11]

F.    In May 2021, McCray and Operating Subsidiary executed the Amended and Restated Employment Agreement ("Agreement").[12]

G.    The Agreement contains an arbitration provision which states in its entirety:

> Any dispute or controversy arising under or in connection with this Agreement or [McCray's] employment with the [Operating Subsidiary], other than claims for injunctive relief (which may be brought in any court having jurisdiction over the partiers), shall be settled exclusively by arbitration, conducted before a panel of three arbitrators one each selected by [McCray] and [Operating Subsidiary] and the third selected by the other two arbitrators. The panel will otherwise conduct the arbitration in accordance with the National Rules for

---

[8] *Id.* ¶ 33.

[9] *Id.* ¶ 40.

[10] *Id.* ¶ 43.

[11] *Id.* ¶ 44.

[12] *Id.* ¶ 9; Pl.'s Opening Br. in Support of Mot. to Dismiss Countercl., Dkt. 29 ("Pl.'s Opening Br.") Ex. A.

the Resolution of Employment Disputes of the American Arbitration Association then in effect. The decision of the panel will be final and binding upon the parties hereto. Judgment may be entered on the panel's award in any court having jurisdiction. The parties acknowledge and agree that in connection with any such arbitration and regardless of outcome, (a) each party shall pay all of its own costs and expenses, including, without limitation, its own legal fees and expenses, and (b) the panel's fees and expenses and other arbitration costs shall be borne entirely by the [Operating Subsidiary]; provided that the arbitrator shall have the discretion to award the prevailing party all or a portion of his or its legal fees and expenses. Any trial shall take place in Chicago, Illinois.[13]

H.     The Agreement also contains a choice of law provision that requires it to be "construed in accordance with the laws of the State of Illinois (without regard to its choice of law provisions)."[14]

I.     On August 16, 2024, McCray filed his complaint against defendants, asserting two direct counts for declaratory judgment and breach of a limited liability company agreement, and one derivative count for breach of fiduciary duty.[15]

---

[13] Agreement § 17. The American Arbitration Association's current rules for employment disputes are the *Employment/Workplace Arbitration Rules and Mediation Procedures*. *See* AM. ARB. ASSOC., *Employment/Workplace Arbitration Rules and Mediation Procedures* (May 1, 2025) ("AAA Rules"), https://www.adr.org/media/aktbpg2y/2026_employment-arbitration-rules-and-mediation-procedures.pdf [https://perma.cc/CST3-V3TG].

[14] Agreement § 18.

[15] Dkt. 1 Counts I–III.

J.   On October 24, defendants moved to dismiss the complaint under Court of Chancery Rule 12(b)(7) for failure to join a necessary party.[16]

K.   On December 10, the court denied defendants' motion to dismiss.[17]

L.   On January 7, 2025, defendants answered the complaint.[18] On January 31, defendants amended their answer to include a counterclaim by Parent Company against McCray for breach of fiduciary duty.[19] Parent Company alleges McCray breached his fiduciary duties to Operating Subsidiary by improperly reimbursing himself for nearly $300,000 of "unauthorized" expenditures or expenditures "without a legitimate business purpose."[20] Parent Company also alleges McCray approved and facilitated or allowed reimbursements for $240,000 of similar expenses claimed by Rakha and Borkovec from 2020 to 2024.[21]

---

[16] Dkt. 9; *see generally* Dkt. 10.

[17] Dkt. 21.

[18] Dkt. 25.

[19] *See* Countercl. The Counterclaim alleges Operating Subsidiary assigned its claims against McCray to Parent Company. *See id.* ¶ 5 ("Parent Company has standing to bring these counterclaims against Mr. McCray because Operating Subsidiary assigned its claims against Mr. McCray on January 13, 2025, to Parent Company in exchange for valuable consideration.").

[20] *See id.* ¶¶ 16–28, 58.i–ii.

[21] *See id.* ¶¶ 35–39, 45–48, 58.iii–iv.

M.     On February 20, McCray moved to dismiss the Counterclaim in favor of arbitration based on the arbitration clause in the Agreement.[22]  The parties briefed the Motion from February 20 to May 19.[23]

N.     On December 5, McCray filed a motion to compel against defendants.[24]  In response to the motion to compel, Parent Company sought leave to submit additional briefing on the Motion,[25] which the court granted.[26]

O.     The parties filed the additional supplemental briefing on January 6, 12, and 13, 2026.[27]  On January 16, the court heard oral argument on the Motion and took the matter under advisement on that date.[28]

**IT IS ORDERED**, this 3rd day of August, 2026:

1.     The Motion is GRANTED IN PART.   Litigation of the Counterclaim is STAYED pending the arbitrators' determination of the Counterclaim's arbitrability.

2.     McCray moved to dismiss the Counterclaim and refer it to binding arbitration under Court of Chancery Rule 12(b)(1).[29]  Under this framework,

---

[22] Dkt. 29 ("Motion" and cited as "Mot.").

[23] Dkts. 29, 34, 37, 40, 45, 47–48.

[24] Dkt. 58.

[25] Dkt. 59.

[26] Dkt. 61.

[27] Dkts. 62, 64, 67.

[28] Dkt. 71.

[29] Pl.'s Opening Br. 3–4.

the court will determine whether to exercise subject matter jurisdiction over a claim which the parties contracted to arbitrate. *Gandhi-Kapoor v. Hone Cap. LLC*, 307 A.3d 328, 338–45 (Del. Ch. 2023).

3. "An arbitration provision is, in effect, a specialized kind of forum selection clause," so "[p]rinciples of contract law" control whether the court should honor the parties' agreement and enforce an arbitration provision. *Gandhi-Kapoor*, 307 A.3d at 338–39 (quotation omitted). Delaware courts will not compel a party to arbitrate or dismiss or stay a claim in favor of arbitration absent clear expression of an intent to arbitrate. *See James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78–80 (Del. 2002) (*Willie Gary*). "[A] motion to dismiss [or stay] . . . will be granted if the 'dispute is one that, on its face, falls within the arbitration clause of the contract.'" *Rummel Klepper & Kahl, LLP v. Del. River and Bay Auth.*, 2022 WL 298311, at \*4 (Del. Ch. Jan. 3, 2022) (quoting *NAMA Hldgs., LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 430 (Del. Ch. 2007)).

4. McCray contends the Counterclaim must be dismissed or stayed because the Agreement's arbitration provision requires any dispute "arising under or in connection with this Agreement or [McCray]'s employment" be arbitrated, and the allegations in the Counterclaim arise from his employment

or the Agreement.[30] McCray also asserts the Agreement delegates the issue of arbitrability to the arbitrators, so the court cannot decide the issue itself.[31]

5. Parent Company argues its derivative breach of fiduciary duty claim does not stem from the Agreement, so it is not subject to arbitration.[32] Alternatively, Parent Company contends the parties revoked the arbitration provision by a separate agreement or that McCray waived his right to arbitration through his litigation conduct here.[33] I begin by addressing the issue of arbitrability, then discuss whether McCray waived the arbitration provision.

**The Agreement Delegates Substantive
Arbitrability to the Arbitrators**

6. The Agreement is "governed by and construed in accordance with the laws of the State of Illinois . . . ."[34] "Delaware courts will generally honor a contractually-designated choice of law provision so long as the jurisdiction selected bears some material relationship to the transaction." *GC Broadway, LLC v. AN SM 1925 Broadway Hldgs., LLC*, 2026 WL 539233, at *13 (Del.

---

[30] Pl.'s Opening Br. 5; Pl.'s Reply in Supp. of his Mot. to Dismiss Countercl. 1–6, Dkt. 36 ("Pl.'s Reply Br.").

[31] Pl.'s Opening Br. 6.

[32] Def.'s Answering Br. in Opp'n to Pl.'s Mot. to Dismiss 4–6, Dkt. 34 ("FDH's Answering Br.").

[33] *Id.* 6–8.

[34] Agreement § 18.

Ch. Feb 26, 2026) (quoting *J.S. Alberici Constr. Co. v. Mid- W. Conveyor, Co.*, 750 A.2d 518, 520 (Del. 2000)).[35]

7.     Delaware follows the *Restatement (Second) of Conflicts of Laws*. *See GC Broadway*, 2026 WL 539233, at *14. Under the Restatement, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied" unless either of two things is true: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971).

8.     The parties do not contest the governing law, and the jurisdiction selected has a substantial relationship to the parties because McCray resides in Illinois.[36] So I interpret the Agreement under Illinois law.

9.     Under Illinois law, the Federal Arbitration Act ("FAA")[37] "governs the construction of an agreement to arbitrate unless the agreement

---

[35] *See also Deuley v. DynCorp Intern., Inc.*, 8 A.3d 1156, 1161 (Del. 2010).

[36] *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2) (A.L.I. 1971).

[37] 9 U.S.C. §§ 1–16.

- 9 -

expressly provides that state law should govern." *E.g.*, *Angel v. Mr. Rooter Corp.*, 2015 WL 1019860, at *7 (Ill. App. Ct. Mar. 9, 2015) (collecting authorities).[38] When a contract contains a choice of law provision, but the arbitration provision is silent or ambiguous as to what law applies to arbitration, the FAA will apply by default. *LRN Hldg., Inc. v. Windlake Cap. Advisors, LLC*, 949 N.E.2d 264, 272 (Ill. App. Ct. 2011) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 60 (1995)) ("[G]eneral choice-of-law clauses do not incorporate state rules which govern allocation of authority between arbitrators and courts."). Here, the arbitration provision is silent as to which law governs that provision but incorporates the American Arbitration Association's rules and has a general Illinois choice of law provision.[39] Because the Agreement does not expressly dictate which law governs, I find that the FAA governs the Agreement's arbitration provision.

10. "When deciding whether the parties agreed to arbitrate . . . [the issue of] arbitrability" under the FAA, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). And courts

---

[38] Delaware follows the same standard. *See* DONALD J. WOLFE & MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 8.02[a] (T. Brad Davey, et al., eds. 2026) (noting proceedings to compel arbitration are governed by the FAA unless the arbitration agreement expressly provides that the Delaware Uniform Arbitration Act controls).

[39] *See* Agreement §§ 17–18.

should not assume that the parties agreed to arbitrate arbitrability unless the parties "clearly and unmistakably agree[d] to do so." *In re BAM Trading Servs. Inc. Securities Litig.*, 733 F. Supp. 3d 854, 862 (N.D. Cal. 2024) (citations omitted).

11.     Federal courts have held that incorporating an arbitration organization's rules into an agreement to arbitrate can constitute "clear and unmistakable evidence" of intent to delegate arbitrability to the arbitrator. *Walton v. Uprova Credit LLC*, 722 F. Supp. 3d 824, 831–32 (S.D. Ind. 2024); *Morgan v. Sundance, Inc.*, 596 U.S. 411, 416–19 (2022).[40]

12.     Illinois courts' "main objective in construing a contract is to give effect to the intent of the parties. *U.S. Bank, Nat'l Ass'n as Trustee for Truman 2016 SC Title Tr. v. Reinish*, 164 N.E.3d 673, 677 (Ill. App. Ct. 2020). To do so, the courts look to the contract as a whole and give the words their plain and ordinary meaning. *Pepper Constr. Co. v. Palmolive Tower Condos., LLC*, 194 N.E.3d 991, 1013 (Ill. App. Ct. 2021) (citing *Premier Title Co. v. Donahue*, 765 N.E.2d 513, 516 (2002)).

13.     Illinois courts follow the "four corners" rule when interpreting contracts. *See, e.g.*, *Gillespie Cmty. Unit Sch. Dist. No. 7, Macoupin Cnty. v. Union Pac. R.R. Co.*, 43 N.E.3d 1155, 1173 (Ill. App. Ct. 2015). In applying

---

[40] This is also the rule in Delaware. *See Willie Gary*, 906 A.2d at 80 ("As a matter of policy, we adopt the majority federal view that reference to the AAA rules evidences a clear and unmistakable intent to submit arbitrability issues to an arbitrator.").

the four corners rule, Illinois courts "initially look[] to the language of a contract alone. If the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence." *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999) (citation omitted).

14. If the language "is susceptible to more than one meaning or is obscure in meaning through indefiniteness of expression" it is ambiguous. *Urban Sites of Chi., LLC v. Crown Castle USA*, 979 N.E.2d 480, 489 (Ill. App. Ct. 2012). "An ambiguity is not created simply because the parties do not agree upon an interpretation." *Urban Sites*, 979 N.E.2d at 489.

15. I find that the arbitration provision is facially unambiguous and presents clear and unmistakable intent to delegate arbitrability to the arbitrators. The parties to the Agreement agreed "[a]ny dispute or controversy arising under or in connection with [the] Agreement" where injunctive relief is not sought must be submitted to binding arbitration held "in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association[.]"[41] These rules, in turn, empower the arbitrator to "rule on his or her own jurisdiction, including . . . the arbitrability of any claim or counterclaim."[42] This is sufficient under the FAA to delegate arbitrability to

---

[41] *Id.* § 17.

[42] AAA Rules R-7.

the arbitrator. *See, e.g.*, *In re BAM*, 733 F. Supp. 3d at 865 (holding language requiring an arbitration to be conducted "in accordance with the rules of the American Arbitration Association" was sufficient to delegate arbitrability to the arbitrator).

16. I find the parties delegated the issue of arbitrability to the arbitrator. Because the parties delegated the issue of arbitrability to the arbitrator, I do not address their arguments related to the Counterclaim's arbitrability under the Agreement.

**McCray Did Not Waive Arbitration of the Counterclaim**

17. Turning to Parent Company's waiver argument, Parent Company argues that McCray waived the arbitration provision either expressly or implicitly through his conduct.[43] Waiver "'is the intentional relinquishment or abandonment of a known right." *Morgan*, 596 U.S. 411, 417 (2022) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). *Accord Manti Hldgs., LLC v. Authentix Acquis. Co., Inc.*, 261 A.3d 1199, 1210 (Del. 2021); *Friddle v. Moehle*, 2024 WL 493536, at *6 (Del. Ch. Feb. 8, 2024).

18. "Arbitration is strongly favored under Delaware law and policy, so 'waiver is not lightly inferred.'" *Friddle*, 2024 WL 493536, at *6 (quoting *Halpern Med. Servs., LLC v. Geary*, 2012 WL 691623, at *3 (Del. Ch. Feb. 17,

---

[43] FDH's Answering Br. 7–8; Def. FDH Hldgs.' Suppl. Br. in Opp'n to Pl.'s Mot. to Dismiss 1–2, Dkt. 45 ("FDH's 1st Suppl. Br."); Def. FDH Hldgs.' Suppl. Reply Br. in Opp'n to Pl.'s Mot. to Dismiss 1–4, Dkt. 48 ("FDH's 1st Suppl. Reply Br.").

2012)).  A party may forfeit their right to arbitrate "by expressly waiving that right, actively participating in litigation as to an arbitrable claim, or otherwise taking action inconsistent with the right to arbitration." *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 8423 A.2d 1245, 1260 n.39 (Del. Ch. 2004). "Waiver of arbitration is a matter of intention" and it must be shown by "clear and convincing evidence." *Friddle*, 2024 WL 493536, at *6 (quotes omitted).[44]

19.  "Absent contractual language to the contrary, the [c]ourt, rather than an arbitrator, decides whether a party's conduct constitutes such a waiver." *Perik v, Student Res. Ctr., LLC*, 2024 WL 181848, at *1 (Del. Ch. Jan. 17, 2024) (citing *Gandhi-Kapoor v. Hone Cap. LLC*, 307 A.3d 328, 357 (Del. Ch. 2023)).  I begin by addressing whether McCray waived the arbitration provision before determining whether his conduct constituted waiver.

### *Explicit Waiver*

20.  Parent Company argues McCray explicitly waived the Agreement's arbitration provision in two ways.  First, it argues McCray's opposition to defendants' motion to dismiss under Rule 12(b)(7) was an explicit waiver of the right to seek arbitration.[45]  Second, Parent Company argues a

---

[44] "To establish proof by clear and convincing evidence means to prove something that is highly probable, reasonably certain, and free from serious doubt."  *Hudak v. Procek*, 806 A.2d 140, 147 (Del. 2002).

[45] Defs.' Answering Br. 7–8.

Mutual Revocation of Agreement to Arbitrate Claims ("Revocation")[46] purportedly signed by McCray expressly supersedes the Agreement's arbitration provision.[47] McCray counters that his position in his 12(b)(7) brief was a legal argument about actions Operating Subsidiary needed to take to be joined, that he does not recall signing the Revocation, and that Parent Company "provided no foundation" for the Revocation's authenticity.[48]

21.     I agree with McCray that his position opposing defendants' motion to dismiss fails to show intent to waive the arbitration provision.  As the court already noted when it denied defendants' motion to dismiss, defendant "could invoke arbitration if [McCray] had sued his employer [Operating Subsidiary]."[49]  The court determined the arbitration provision was inapplicable at that time, so McCray could not have waived the provision.

22.     I now turn to the Revocation.  "Where the parties have agreed, in writing, to waive an arbitration provision, 'the [c]ourt will give priority to the parties' intentions as reflected in the four corners of the agreement.'" *Friddle*, 2024 WL 393556, at *6 (quoting *GMG Cap. Invs., LLC v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 779 (Del. 2012)).  If the agreement is clear and

---

[46] Dkt. 40, Ex. A.

[47] Def.'s 1st Suppl. Br. 2.

[48] Resp. to Suppl. Br. in Support of Pl.'s Mot. to Dismiss. Countercl. 2–3, Dkt. 47.

[49] Dkt. 21.

unambiguous, "extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity."

23. The Revocation is ambiguous. In full, the Revocation states:

> As part of onboarding, you previously signed a "Mutual Agreement to Arbitrate Claims," in which you and [Operating Subsidiary] agreed to resolve by final and binding arbitration any and all claims or controversies for which a court otherwise would be authorized by law to grant relief, in any way arising out of, relating to or associated with your employment with [Operating Subsidiary], or the termination of such employment.
>
> My signature below certifies that I agree to revoke the Mutual Agreement to Arbitrate Claims. This Agreement constitutes the entire agreement between the parties concerning employment claims dispute resolution, and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between Employee and [Operating Subsidiary] with respect to its subject matter. Effective the date you sign this document, the Mutual Agreement to Arbitrate Claims will be void and will no longer have any force or effect.[50]

Attached to the Revocation is an electronic signature, purportedly belonging to McCray, dated September 5, 2022.[51]

24. Here the language is ambiguous. The Revocation refers to a "Mutual Agreement to Arbitrate Claims" that McCray signed "[a]s part of onboarding." McCray was initially hired and, presumably, onboarded in May

---

[50] Revocation 2.

[51] Revocation 1.

2018. The arbitration provision was not in effect until 2021. The Revocation also states that it supersedes "any and all other agreements . . . with respect to its subject matter." What constitutes the Revocation's subject matter is unclear. I believe the "subject matter" could conceivably refer to the "Mutual Agreement to Arbitrate Claims" or to any agreement referring disputes to arbitration. The text of the agreement is ambiguous. Therefore, without more, I cannot find, free from serious doubt, that McCray intentionally waived the Agreement's arbitration provision by signing the Revocation (if he signed it). I find McCray did not expressly waive the arbitration provision.

### *Implicit Waiver*

25. Now I turn to Parent Company's litigation conduct argument. Parent Company argues McCray's conduct in this litigation is "inconsistent with the right to arbitration."[52] Parent Company argues McCray took such action by seeking discovery on an arbitrable issue after moving to compel arbitration.[53] McCray contends his motion to compel is unrelated to the arbitrable claims and the timing of his motion does not show an intent to arbitrate.[54]

---

[52] Defs.' Answering Br. 7–8; FDH Hldgs.' 2d Suppl. Br. in Opp'n to Pl.'s Mot. to Dismiss 2–4, Dkt. 62 ("FDH Hldgs.' 2d Suppl. Br."); FDH Hldgs., LLC's Reply to Pl's Resp. to 2d Suppl. Br. in Opp'n to Pl.'s Mot. to Dismiss 1–4, Dkt. 67 ("FDH Hldgs.' 2d Suppl. Reply").

[53] FDH Hldgs.' 2d Suppl. Br. 3–5; FDH Hldgs.' 2d Suppl. Reply 2–3.

[54] Resp. to 2d Suppl. Br. in Supp. of Pl.'s Mot. to Dismiss Countercl. 2–4, Dkt. 64.

26.    "Even if no express language is used, an implied waiver of a right is possible, but only if there is a clear, unequivocal, and decisive act of the party demonstrating relinquishment of the right." *Friddle*, 2024 WL 493536, at *8 (quotation omitted).  McCray's conduct does not satisfy this test.

27.    First, McCray moved to dismiss the Counterclaim in favor of arbitration promptly after Parent Company filed it.[55]  He did not wait strategically to raise the argument until after suffering a litigation setback here.[56]  Second, McCray's motion to compel[57] is not clear and convincing evidence McCray intended to waive the right to seek arbitration.  McCray argues the discovery at issue in the motion to compel is relevant to potential claims—common law and contractual indemnification—that are not covered by the Agreement and thus are not subject to arbitration, and he raises concerns about the financial condition of Parent Company and defendant FDH Infrastructure Group, LLC.[58]  Nor does it appear McCray is attempting to secure an advantage by seeking discovery he would be unable to obtain in the arbitration.  *See* AAA Rules R-21 ("[t]he arbitrator shall manage any necessary exchange of information among the parties, including depositions,

---

[55] *Compare* Countercl. (filed Jan. 31, 2025), *with* Mot. (filed Feb. 20, 2025).

[56] *See Gandhi-Kapoor v. Hone Cap. LLC*, 307 A.3d 328, 357–58 (Del. Ch. 2023), *aff'd*, *CSC Upshot Ventures I, L.P. v. Gandhi-Kapoor*, 326 A.3d 369 (Del. 2024) (ORDER).

[57] Dkt. 58.

[58] Dkt. 58 ¶¶ 14.a.–c.

interrogatories, document production, or other means"), R-22 ("[t]he arbitrator shall have the authority to issue any orders necessary to enforce the provisions of Rules R-20 and R-21"); *compare Donofrio v. Peninsula Healthcare Servs., LLC*, 2022 WL 1054969, at \*7 (Del. Ch. Apr. 8, 2022) (finding no waiver where defendants "have not engaged in any discovery that they would not be entitled to once the matter is transferred to arbitration"), *with Dorsey v. Nationwide Gen. Ins.*, 1989 WL 102493, at \*2 (Del. Ch. Sep. 8, 1989) (finding waiver where defendant litigated for two years and "sought and obtained the benefit of discovery through interrogatories and document production").

\*        \*        \*

28.    Having determined the parties delegated arbitrability to the arbitrators and McCray did not waive the Agreement's arbitration provision, I find the court's consideration of the Counterclaim should be stayed pending the arbitrator's determination of arbitrability.

29.    This is a Report under Court of Chancery Rule 144(b)(1).  Under Court of Chancery Rule 144(c)(2)(A), exceptions to this Report are stayed pending issuance of a Final Report in this action.

/s/ *Christian Douglas Wright*
Magistrate in Chancery

- 19 -